UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PETER DICKMAN,

                Plaintiff,                             **MEMORANDUM AND ORDER**
                                                                      10 CV 2595 (DRH) (GRB)

       - against -

VERIZON COMMUNICATIONS, INC.
doing business as Verizon Wireless,

                Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Attorneys for Plaintiff**

**Amir J. Goldstein, Esq.**
166 Mercer Street
Suite 3A
New York, New York 10012
By:    Amir J. Goldstein, Esq.

**Attorneys for Defendant**

**Cullen and Dykman LLP**
177 Montague Street
Brooklyn, New York 11201
By:    Wendy Marla Tobias, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Peter Dickman alleges that Defendant Verizon Communications Inc., doing business as Verizon Wireless ("defendant" or "Verizon"), has violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 349 *et seq.* Presently before the Court is defendant's motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, defendant's motion is granted in part and denied in part.

## BACKGROUND

The following facts, taken from the parties' Local Civil Rule 56.1 Statements,[1] are largely disputed, as noted below.

### *The Original Account*

In approximately 2002 or 2003, plaintiff moved to 136-14 Northern Boulevard, in Queens, New York. At plaintiff's request, defendant began to provide him with telephone and DSL services under account number 718-358-6431-076 (the "Original Account"). Plaintiff asserts that after approximately four years, his telephone and DSL services were "disconnected out of nowhere." (Pl.'s Dep. at 9.) Plaintiff asserts that, after speaking to one of defendant's customer service representatives, he learned that his services could not be reactivated under the Original Account. (*Id.* at 13.) Plaintiff's final bill from defendant showed that plaintiff had paid off a "Past Due" amount of $258.27 on May 31, 2006. (Aff'n of Amir Goldstein, dated Nov. 10, 2011 ("Goldstein Aff'n") Ex. 3 at 1.) The bill also showed that Verizon actually owed plaintiff a $33.63 credit because although plaintiff's services were discontinued on June 19, 2006, he had already been billed for (and paid for) services through July 9, 2006. (*Id.* at 2.)

### *The New Account*

Plaintiff contends that after the Original Account was disconnected, he did not receive any further services from defendant. (Pl.'s Dep. at 13.) Defendant disputes this assertion, and

---

[1] Defendant did not submit a document expressly labeled as a Local Civil Rule 56.1 Statement. It did, however, submit an Affirmation, dated September 19, 2011, signed by defendant's counsel, which sets forth, in separately numbered paragraphs, statements of fact and citations to record evidence. Plaintiff responded to the factual statements made in this Affirmation as though it was a Local Civil Rule 56.1 Statement, and the Court will treat it as such.

contends that plaintiff opened a new account, number 718-358-6431-174 (the "New Account"), on or about June 19, 2006. (Aff'n of Wendy Tobias, dated Sept. 19, 2011 ("Tobias Aff'n"), Ex. E.) During his deposition, plaintiff denied opening the New Account and denied ever receiving any bills for the New Account. (Pl'.s Dep. at 15.)

*The Disputed Documents*

Defendant asserts that the New Account was billed on June 19, 2006, July 19, 2006, August 19, 2006, and September 1, 2006. (Def.'s 56.1 ¶ 16.) During his deposition, plaintiff was shown four documents that corresponded to these dates. (Pl.'s Dep. at 15-17.) The first document (the "June 19 Document") has a Verizon logo and the following header:

> Telephone Number: 718-358-6431
>
> Account Number: 7183586431174
>
> Statement Ending: Jun 19, 2006 12:00:00 AM

(Tobias Aff'n, Ex. E at 1.) At the top of the June 19 Document is a message stating: "PETER DICKMAN Thank You for Choosing Verizon!" (*Id.*) The June 19 Document contains an "Account Summary," which lists "New Charges" in the amount of $178.64. (*Id.*) The June 19 Document states: "These monthly charges are for your service from June 19 to July 18." (*Id.*) The "Itemized Calls" section of the June 19 Document shows that 110 local calls were made at a rate of 9 cents per call. (*Id.* at 3.)

The second document (the "July 19 Document") has an identical format to the June 19 Document, but indicates that it is a "Statement Ending July 19, 2006" and that the listed monthly charges "are for your service from July 19 to August 18." (*Id.* at 5.) The July 19 Document's "Account Summary" shows "Previous Charges" in the amount of $178.64 and "New Charges" in

3

the amount of $30.10.  (*Id.*)  The July 19 Document reflects that sixty-four local calls were made.  (*Id.* at 7.)

The third document (the "August 19 Document") contains an identical header, except that it indicates that it is a "Statement Ending Aug. 19, 2006" and lists "monthly charges [ ] for your service from August 19 to September 18."  (*Id.* at 8.)  The "Account Summary" lists "Previous Charges" in the amount of $208.74 and "New Charges" in the amount of $26.89, which includes charges for nine local calls.  (*Id.* at 8, 10.)

The fourth document (the "September 1 Document") again contains the same header along with an indication that it is a "Statement Ending Sep. 1, 2006."  (*Id.* at 11.)  The September 1 Document includes the notation "FINAL BILL" and states: "These monthly charges are for your service from September 01 to September 30."  (*Id.*)  The "Account Summary" lists "Previous Charges" in the amount of $235.63, but also reflects a credit of $35.22.  (*Id.*)  The "Total Due" is listed as $200.41.  (*Id.*)

When shown these four documents during his deposition, plaintiff denied ever receiving them.  (Pl.'s Dep. at 15-17.)  Plaintiff did acknowledge, however, that each of the four documents described above contained the phone number associated with the Original Account.  (*See id.*)

***Deposition Testimony of Chanda Bishop***

Chanda Bishop, employed since 1997 as a staff manager in the Verizon Collections Center, testified at her deposition that her current job duties include overseeing "final[ ] collection strategies."  (Bishop Dep. at 5-7.)  Bishop did not have any direct involvement with plaintiff or the Original or New Accounts.  (*Id.* at 19-20.)

### 1. The Disputed Documents

Bishop reviewed copies of the June 19, July 19, August 19, and September 1 Documents, and she testified that the Documents were "not the actual bill[s]" for the New Account, but were "similar [in] format" to actual bills. (*Id.* at 39.) Specifically, Bishop testified that the Documents were internal documents that set forth the information that was included on the bills sent out to the customer, but differed from the actual bills in that they contained internal codes in the place of certain "verbiage" contained in the bills. (*Id.* at 42.) Bishop further testified that nothing on the face of any of the four Documents indicated the date on which they were generated. (*See id.* at 46.)

### 2. Verizon's Interactions and Correspondence with Credit Reporting Agencies

According to Bishop, when Verizon makes a determination that it will report delinquent account information to credit reporting agencies ("CRAs"), that account information is sent to one or more outside vendors. Those vendors format the account data and transmit it, on Verizon's behalf, to the CRAs. (*Id.* at 12.)

Bishop testified that when Verizon "get[s] a dispute on behalf of a customer via [a] credit bureau, we get what is called an automated consumer dispute verification" or "ACDV." (*Id.* at 19.) An ACDV contains information about the customer's dispute as well as the response that Verizon sends back to the CRAs. (*Id.*) In connection with the present motion, defendant has submitted three ACDVs, which were purportedly created after Verizon learned that plaintiff disputed a $200 past due amount on the New Account. These ACDVs are dated December 8, 2009, December 10, 2009, and May 11, 2010, respectively. (Tobias Aff'n, Ex. F.)

According to Bishop, when Verizon learns that a customer disputes a delinquent charge,

it "investigate[s] the dispute" by locating the account, viewing any account notations and information about the account holder (such as name, address, and social security number), and reviewing the payment history on the account. (Bishop Dep. at 26.) It is unclear from Bishop's testimony whether this investigative procedure is employed when Verizon learns of a dispute directly from a customer, or when a CRA reports to Verizon that a consumer dispute has occurred. (*Compare id.* at 19 (describing Verizon's response when it "get[s] a dispute on behalf of a customer via [a] credit bureau") *with id.* at 26 (responding to a question regarding Verizon's response to a "dispute from a customer").)

***Plaintiff's Attempts to Dispute the Amounts Allegedly Owed on the New Account***

Plaintiff asserts that he first learned of Verizon's claim that he owed approximately $200 on the New Account when he received a notice from a collections agency in June or July 2006. (Pl.'s Dep. at 17-18, 21.) Plaintiff wrote the collections agency a letter in which he disputed the amount owed and asserted that he no longer received telephone services from Verizon. (*Id.* at 18.) For the next two years, plaintiff received letters from at least three different collections agencies. (*Id.* at 18-20.) Plaintiff testified that he sent several letters to the collections agencies and also spoke to them via telephone. (*Id.*)

Plaintiff also contacted Verizon by telephone in July 2006, shortly after he received his first collections notice. (*Id.* at 21, 24.) According to plaintiff, the individual he spoke with at Verizon told him: "We can't help you, deal with the collection company, they have all the records." (*Id.* at 24.) Indeed, Verizon's own records of its contacts with plaintiff reflect that on March 1, 2007, plaintiff was provided "with the telephone number for the outside collection agency to dispute the service" and "referred" to a collections agency. (Goldstein Aff'n, Ex. 5 at

3.)

On February 14, 2008, plaintiff reviewed his Equifax credit report, which indicated that plaintiff had a past due balance of $200 owed to Verizon. (Goldstein Aff'n, Ex. 6.) The report further indicated the "Date of First Delinquency" was "03/2006." (*Id.* at 2.) The "Comments" section of the report stated: "Collection account, Account closed by credit grantor." (*Id.*)

On July 8, 2008, plaintiff wrote a letter to Verizon, in which he stated that he had reviewed his credit report, had disputed the information contained therein with "Experian, Equifax and TransUnion," and that "the results of the [CRAs'] investigation came back 'verified.'" (Goldstein Aff'n, Ex. 7 at 1.) In the letter, plaintiff disputed the $200 delinquency amount, denied having opened the New Account, and requested that Verizon "send me the proper proof that what you are reporting is true." (*Id.*)

On the same date, plaintiff sent separate but identical letters to three CRAs, which stated: "This debt is not mine and I was given no evidence of my obligation to pay this debt to this collection agency." (Goldstein Aff'n, Ex. 8 at 1.) On July 24, 2008, Equifax responded to plaintiff with the results of its investigation. (Goldstein Aff'n, Ex. 10.) Equifax stated that it "researched the credit account" and "verified" that the New Account belonged to plaintiff. (*Id.*) Equifax informed plaintiff that "[a]dditional information has been provided from the original source regarding this item." (*Id.*)

***Plaintiff's Alleged Damages***

Plaintiff asserts that he has been damaged by Verizon's "negligent and willful[ly] inaccurate reporting" to the CRAs. (Aff. of Peter Dickman, dated Nov. 3, 2011 ("Dickman Aff.") ¶ 16.) Plaintiff contends that his application for a credit card with Chase Bank was denied

7

because Chase Bank "wouldn't be able to approve [him] with a negative remark on [his] credit report." (*Id.*) Plaintiff's credit line on his American Express Blue Card was reduced twice, as was his cash advance limit on that account. (*Id.*) Plaintiff's attempt to transfer a credit balance in 2008 was "denied due to serious delinquency." (*Id.*) Finally, Washington Mutual reduced his credit line by 10% and declined plaintiff's request to reduce the APR on the account. (*Id.*) Plaintiff further asserts that he has suffered "a substantial amount of mental anguish," including "severe stress and anxiety," "embarrassment, frustration and unnecessary stress." (*Id.* ¶¶ 17-19.)

*The Complaint*

Plaintiff alleges that defendant violated the FCRA, specifically 15 U.S.C. §§ 1681s-2(a) and (b), "by furnishing inaccurate information relating to the Plaintiff to the credit reporting agencies and failing to delete inaccurate information." (Compl. ¶ 20.) Plaintiff asserts that defendant's statutory violation was "willful, rendering it liable for actual or statutory, and punitive damages" pursuant to 15 U.S.C. § 1681n. (*Id.* ¶ 22.) Plaintiff also seeks costs and attorney's fees.

Plaintiff also alleges that defendant engaged in "deceptive business practices" in violation of New York General Business Law § 349 by "fail[ing] to maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the Plaintiff." (*Id.* ¶ 25.) The Complaint also contains a breach of contract claim based upon defendant's "publishing false information and/or failing to accurately verify, report and update inaccurate information it published to the three major credit bureaus." (*Id.* ¶ 31.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. The court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). A district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the

respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.     The FCRA

The FCRA "was enacted to ensure 'that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer . . . .'" *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 139 (E.D.N.Y. 2005) (quoting 15 U.S.C. § 1681(b)). "'In addition to regulating the conduct of credit reporting agencies . . . [f]urnishers of information also have a duty to provide accurate information and must correct inaccuracies when notified by a consumer reporting agency.'" *Id.* (quoting *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 41 (E.D.N.Y. 2005)).

## III.    Plaintiff's FCRA Claim Made Pursuant to 15 U.S.C. § 1681s-2(a) is Dismissed

Verizon does not dispute plaintiff's assertion that it is a "furnisher of information" to CRAs such that its conduct is governed by Section 1681s of the FCRA. *See Gaft v. Mitsubishi Motor Credit of Am.*, 2009 WL 3148764, at *7 (E.D.N.Y. Sept. 29, 2009). Specifically, 15

U.S.C. § 1681s-2(a) relates to Verizon's "duty to report information and the ongoing duty to correct inaccurate information." *Id.*; *see also Prakash v. Homecomings Fin.*, 2006 WL 2570900, at *2 (E.D.N.Y. Sept. 5, 2006).

Defendant correctly asserts, however, that there is "no private right of action" under 15 U.S.C. § 1681s-2(a), as "[t]he duties imposed under this section are only enforceable by a governmental agency or official." (Def.'s Mem. at 4.) Because plaintiff lacks standing to pursue a claim against defendant under Section 1681s-2(a), that claim is dismissed. *See Gaft*, 2009 WL 3148764 at *7 (finding plaintiff could not pursue a claim under Section 1681s-2(a) "because the plain language of the statute limits enforcement of this subsection to government agencies and officials"); *Prakash*, 2006 WL 2570900 at *2 (same); *Caltabiano*, 387 F. Supp. 2d at 140 (same).

### IV. Questions of Fact Exist With Respect to Plaintiff's FCRA Claim Made Pursuant to 15 U.S.C. § 1681s-2(b)

Plaintiff may, however, have a private right of action under 15 U.S.C. § 1681s-2(b), which provides:

> After receiving notice pursuant to [15 U.S.C. § 1681i(a)(2)[2]] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) conduct an investigation with respect to disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency; [and]

---

[2] Section 1681i(a)(2) requires a CRA who receives notice of a dispute from a consumer to notify the provider of the disputed information within five business days. 15 U.S.C. § 1681i(a)(2)(A).

11

> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information . . . .

15 U.S.C. § 1681s-2(b)(1). While the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have "assum[ed] a reasonableness standard for judging the adequacy of the required investigation." *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010) (collecting cases).

"[U]nder §1681s-2(b), [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer reporting agency." *Prakash*, 2006 WL 2570900 at *3. Here, it is undisputed that Verizon received notice of plaintiff's dispute regarding the $200 debt owed on the New Account from a CRA. The record indicates that, at plaintiff's request, Equifax[3] contacted Verizon regarding plaintiff's dispute in July 2008. (*See* Goldstein Aff'n, Ex. 10.) Thus, Verizon's statutory duty to investigate was triggered at least as of that time. *See Prakash*, 2006 WL 2570900 at *3.

Defendant asserts that the existence of the ACDVs evidence that Verizon conducted a satisfactory investigation of plaintiff's dispute in compliance with Section 1681s-2(b). (Def.'s Mem. at 5.) Defendant contends that the ACDVs demonstrate that Verizon confirmed the accuracy of "plaintiff's name, address and social security number," as well as "the account opening date, closing date and outstanding amount [owed]." (*Id.*; *see also* Tobias Aff'n, Ex. F.)

As plaintiff points out, however, although Bishop testified about the ACDVs, she did not

---

[3] There is no dispute that Equifax constitutes a consumer reporting agency as that term is defined in the FCRA.

actually create them. Nor did she personally investigate plaintiff's dispute or communicate with Equifax (or any other CRA) about plaintiff's account. Moreover, Verizon has presented the Court with no testimony (either by way of deposition or affidavit) from any of the Verizon employees whose names are listed on the ACDVs. (*See* Tobias Aff'n, Ex. F at 3 (12/8/09 ACDV – Dennis Evans), 9 (12/10/09 ACDV – Sherral Jones), & 15 (5/11/10 ACDV – Jacqueline Gates).) Finally, Verizon has not proffered any testimony from the Verizon employees who actually conducted the statutorily required investigation following Equifax's communication in July 2008 (to the extent such employees are different than the employees named on the ACDVs).

Even putting aside these deficiencies, the Court finds that the ACDVs do not demonstrate, on their face, that defendant conducted a satisfactorily reasonable investigation of plaintiff's dispute as a matter of law. Section 1681s-2(b)(2) provides that a furnisher must complete the required investigation within thirty to forty-five days. *See* 15 U.S.C. § 1681s-2(b)(2) (stating that the investigation must be completed "before the expiration of the period under section 1681i(a)(1)"); *see also* 15 U.S.C. § 1681i(a)(1). Equifax reported plaintiff's dispute to Verizon in July 2008. The three ACDVs defendant relies on, however, are dated December 8, 2009, December 10, 2009, and May 11, 2010 – well beyond the expiration of the thirty to forty-five day deadline.

Moreover, it is unclear that these ACDVs were actually created in response to Equifax's July 2008 report to Verizon. Indeed, Equifax's report back to plaintiff (i.e., that Verizon had "verified" that the New Account "belonged to" plaintiff) was made in July 2008 – more than one year before the date on the first ACDV. (*See* Goldstein Aff'n, Ex. 10 at 1.)

Further, the ACDVs contain certain troublesome indications. Specifically, the second

13

ACDV (dated December 10, 2009) states that the New Account was opened on June 1, 2006, but also indicates that the First Date of Delinquency was March 1, 2006. (*See* Tobias Aff'n, Ex. F at 8.) Indeed, the same information is present in plaintiff's February 14, 2008 Equifax credit report. (Goldstein Aff'n, Ex. 6.) Plaintiff asserts that this discrepancy alone creates questions of material fact as to whether Verizon failed to undertake a reasonable investigation of his dispute, because it reported to CRAs that he had become delinquent on the New Account three months *before* he actually opened it. (*See* Pl.'s Opp'n at 10-11.)[4]

In response to this argument, defendant's counsel's submits an affirmation suggesting that the March 1, 2006 date on the second ACDV actually referred to plaintiff's First Date of Delinquency on the Original Account. (Reply Aff'n ¶ 16 (opining that "it makes perfect sense that plaintiff would have negative history on his credit report prior to June 2006").) The Court is not persuaded by this assertion, which is made by defendant's counsel without personal knowledge or citation to record evidence. Moreover, the assertion is belied by the fact that the third ACDV, dated May 11, 2010, has a different Date of First Delinquency: June 1, 2006 – the day the New Account was purportedly opened. (*See* Tobias Aff'n, Ex. F. at 14.)

Finally, defendant asserts that it conducted a reasonable investigation of plaintiff's dispute because "a review of plaintiff's bills . . . reveal that over 100 local telephone calls were made and/or received from his telephone number between June 2006 and September 2006." (Def.'s Mem. at 5.) The Court, however, has no evidence before it that would indicate that

---

[4] Defendant asserts that plaintiff's memorandum of law in opposition is untimely and was not received by defendant's counsel until November 17, 2011 – six days after it was due to be served. (Reply Aff'n of Wendy Tobias, Esq., dated Nov. 28, 2011 ("Reply Aff'n") ¶¶ 3, 4.) Defendant has not moved to strike plaintiff's legal memorandum and the Court, in the exercise of its discretion, will consider the arguments set forth therein.

Verizon actually reviewed these so-called "bills" as part of its statutorily required investigation. Even if there were record evidence to that effect, such evidence alone would not satisfy the Court that defendant complied with Section 1681s-2 as a matter of law. Plaintiff has disputed ever receiving any bills on the New Account, and Verizon's own witness acknowledged that the documents proffered by Verizon are not actually "bills," but are internal documents reflecting what would have been on the bills sent out to the customer. (*See* Bishop Dep. at 39.) The documents themselves do not show the date on which they were generated, nor do they confirm that actual bills were ever sent to plaintiff's address.

Overall, the Court concludes that questions of fact exist regarding whether Verizon conducted a sufficiently reasonable investigation in compliance with Section 1681s-2(b). Accordingly, defendant's motion for summary judgment as to this claim is denied.

V.  *Plaintiff's New York General Business Law § 349 Claims are Dismissed*

Defendant does not address the merits of plaintiff's cause of action under the New York General Business Law ("GBL") § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business . . . ." N.Y. Gen. Bus. L. § 349(a). To state a claim for relief under that statute, a plaintiff must demonstrate that the complained-of action "is consumer-oriented, misleading in a material way, and that the plaintiff suffered as a result of the deceptive act." *Okocha*, 700 F. Supp. 2d at 375. Plaintiff asserts that defendant violated the GBL because "[d]espite receiving several disputes from Plaintiff (both verbal[ly] and in writing)," defendant "repeatedly reported that Plaintiff owed a balance of $200 to multiple credit bureaus over at least two and a half years," even though this report was "false and inaccurate." (Pl.'s Opp'n at 13.) Plaintiff claims that as a result of defendant's conduct, he "suffered credit denials and reductions

in credit lines by several of [his] creditors." (*Id.*)

Although defendant has not raised this argument, the Court finds that plaintiff's GBL claim is preempted by FCRA and must be dismissed. Two separate provisions of FCRA are relevant on this point. First, Section 1681h(e) sets forth a "Limitation of Liability," which provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, . . . except as to false information furnished with malice and willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Second, Section 1681t(b)(1)(F) preempts any state law claim "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).

Courts within this Circuit have noted the apparent contradiction between these two provisions. *See Prakash*, 2006 WL 2570900 at *5 ("Though § 1681t(b)(1)(F) appears to preempt all state law claims [against furnishers of information], Congress did not withdraw § 1681h(e) – which preempts certain state law claims, but impliedly permits others – when it added § 1681t(b)(1)(F) to the Code in 1996."); *Kane v. Guar. Residential Lending, Inc.*, 2005 WL 1153623, at *6 (E.D.N.Y. May 16, 2005) (noting that "while [Section 1681t(b)(1)(F)] appears to grant absolute immunity to furnishers of information, [Section 1681h(e)] appears to bestow only qualified immunity, while permitting claims that include allegations of willful intent or malice").

District courts have adopted different approaches to address this contradiction. Under the

16

"statutory approach," Section 1681t(b)(1)(F) "preempts only state statutory claims against furnishers of information." *Prakash*, 2006 WL 2570900 at *5 n.8 (citing *Manno v. Am. Gen. Fin. Co.*, 2006 U.S. Dist. LEXIS 46902, at *26 (E.D.Pa. July 12, 2006)). Under the "total preemption" approach, Section 1681t(b)(1)(F) "preempts both state statutes and common law causes of action that related to the subject matters listed in [Section 1681s-2]." *Id.* at *5 n.9. Finally, several courts within this Circuit have adopted the "temporal approach," *see id.* at *5; *Kane*, 2005 WL 1152623 at *9, pursuant to which:

> [S]tate law claims based on actions of a furnisher of information after the furnisher has received notice of inaccuracies are held preempted by § 1681t(b)(1)(F), while actions taken before notice has been received may not be preempted. It is important to note that the notice referred to here need not be from a credit reporting agency, as is required to sustain a private cause of action under § 1681s-2(b) of FCRA; notice may be received from [ ] a credit reporting agency or from the consumer himself.

*Kane*, 2005 WL 1153623 at *8 (internal citation omitted).

The Court need not decide which approach to apply because the result is the same under any of the three approaches outlined above. Under the "statutory approach," "only non-statutory claims alleging malice or willful intent survive" – plaintiff's GBL § 349 is a statutory claim that would be preempted. *Prakash*, 2006 WL 2570900 at *7 n.10. Plaintiff's GBL § 349 claim would also be preempted pursuant to the "total preemption" approach, under which "*all* potential state law claims are preempted." *Id.* Finally, plaintiff's GBL § 349 claim would be preempted under the "temporal approach" because his claim – that he notified Verizon of his disputes but Verizon continued to incorrectly report that plaintiff owed $200 – "falls squarely within the scope of § 1681s-2." *See id.* at *6 (finding claim "that defendant violated the Deceptive Business

17

Practices of New York [statute] by failing to act once notified of the inaccurate information" preempted under "temporal approach"); *see also Kane*, 2005 WL 1153623 at *9 (preempting claims based upon defendant's actions that occurred after it "received notice of the inaccuracies" under the temporal approach).

Thus, that portion of defendant's motion seeking summary judgment as to plaintiff's GBL § 349 claim is granted, and that claim is dismissed.

## VI. *Plaintiff's Breach of Contract Claim is Dismissed*

Neither party addresses plaintiff's third cause of action, in which he alleges that Verizon "breached a contract with the Plaintiff by publishing false information and/or failing to accurately verify, report and update inaccurate information it published to the three major credit bureaus." (Compl. ¶ 31.) Plaintiff has failed to proffer any evidence as to the existence of a contract that would give rise to the obligation alluded to in the Complaint. Moreover, this state law claim – which appears to mirror plaintiff's FCRA and GBL claims – is preempted by the FCRA, as described above.

## *CONCLUSION*

For the reasons set forth above, defendant's motion for summary judgment is granted as to plaintiff's FCRA claim made pursuant to Section 1681s-2(a), as well as his GBL § 349 and breach of contract claims. Defendant's motion is denied as to plaintiff's FCRA claim made pursuant to Section 1681s-2(b).

The parties are directed to contact Magistrate Judge Gary R. Brown within thirty days of the date of this Order to schedule a pretrial conference.

**SO ORDERED.**

Dated: Central Islip, New York
      June 28, 2012

                                            /s/
                                          Denis R. Hurley
                                          Unites States District Judge